IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PERMA-PIPE, INC., | ) |
| | ) |
| Plaintiff, | ) Case No. |
| | ) |
| | ) Judge |
| v. | ) |
| | ) |
| LIBERTY SURPLUS INSURANCE CORPORATION, | ) |
| | ) |
| Defendant. | ) |

# COMPLAINT

The Plaintiff, Perma-Pipe, Inc., ("Plaintiff" or "Perma-Pipe"), by and through their attorneys, Laurie & Brennan, LLP, and for their Complaint against the Defendant, Liberty Surplus Insurance Corporation ("Defendant" or "Liberty") state as follows:

## NATURE OF THE ACTION

1. Under Illinois law, a breach of the duty to defend under a general liability insurance policy occurs when a conflict between the insured and insurer exists and the insurer refuses to allow the insured to choose counsel to be paid by the insurer to defend the insured in a lawsuit. Illinois law further dictates that a conflict exists when an insurer controls the defense of a claim even if there are no reservation of rights when the potential liability vastly exceeds the limits of insurance. Liberty refused to allow Perma-Pipe to choose its own counsel to defend it in two lawsuits, even though Perma-Pipe is potentially liable for up to $50 million in the underlying lawsuits and Liberty's limits of insurance are only $1 million. Perma-Pipe seeks an order finding the policy was breached and an order directing Liberty to allow Perma-Pipe to choose its own counsel to be paid by Liberty to defend it in the underlying lawsuits.

1

## PARTIES

2. Perma-Pipe is a Delaware corporation with its principal place of business in Niles, Illinois and is thus a citizen of Delaware and Illinois.

3. Perma-Pipe is the largest manufacturer of pre-insulated piping systems in North America. Perma-Pipe provides engineered system layout review, product selection based on the client's needs. Perma-Pipe sells its products to a broad customer base, including industrial chemical and petroleum producers, airports, governmental agencies, and institutions such as housing projects, universities, and prisons.

4. Liberty is a corporation incorporated in the state of New Hampshire with its principal place of business in Massachusetts and is thus a citizen of New Hampshire and Massachusetts. Liberty does business in the state of Illinois.

## JURISIDCTION AND VENUE

5. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and the amount in controversy, without interest and costs, exceeds $75,000.00

6. This court has personal jurisdiction over the Defendant by virtue of its contacts with the forum state and pursuant to 735 ILCS 5/2-209 in that it does business in the state of Illinois.

7. Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391 as Liberty resides in this district, would be subject to personal jurisdiction this district, and does substantial business within this District.

## LIBERTY ISSUES INSURANCE POLICIES TO PERMA PIPE IN ILLINOIS

8. Perma-Pipe purchased from Liberty a Commercial General Liability policy that was delivered to its corporate headquarters in Niles, Illinois, through insurance broker Mesirow for the years 11/1/07 to 11/1/08, policy number DGLCH184358.

2

9. Perma-Pipe also purchased a renewal of Commercial General Liability policy, policy number DGLCH184358 for the period of 11/1/08 to 3/31/10 that was delivered to its corporate headquarters in Niles, Illinois through insurance broker Mesirow.

10. Each one year policy referenced above contains a $1,000,000 per occurrence limit with a $2,000,000 aggregate.

11. Each policy covered risks for Perma-Pipe anywhere in the United States.

12. Section 1(a) "Insuring Agreement" states as follows:

We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury" or property damage" to which this insurance applies. *We will have the right and duty to defend the insured* against any "suit" seeking those damages

(emphasis added).

## NOTICE OF A CLAIM

13. On October 26, 2010, Factory Mutual Insurance Company as agent for the Regents of the University of California sent a letter to Perma-Pipe. (A copy of October 26, 2011 Letter is attached as Exhibit A)

14. The October 26, 2010 letter claimed that Perma-Pipe had sold the ultimately installed underground pipes in a construction project at the University of California Mission Bay Campus ("Mission Bay Campus") and the pipes had suffered a "catastrophic failure" (Exhibit A).

15. Factory Mutual claimed that Perma-Pipe would be responsible for property damage and the costs to repair/fix the pipe. (Exhibit A)

16. On January 25, 2011, Ranger Pipelines, Inc. ("Ranger") sent a letter to Perma-Pipe stated that it too received a demand letter from Factory Mutual concerning the pipe failure at the Mission Bay Campus. Ranger claimed that allegedly Perma-Pipe was required to

3

indemnify Ranger for any and all damages etc assessed against Ranger concerning the alleged pipe failure (A copy of the January 25, 2011 letter is attached as Exhibit B).

## LIBERTY ACCEPTS THE DEFENSE OF THE CLAIM UNDER A FULL RESERVATION OF RIGHTS

17. On March 1, 2011, Liberty sent a letter to Perma-Pipe responding to the potential claims made by Factual Mutual Insurance (A copy of the March 1, 2011 Letter is attached as Exhibit C).

18. Liberty noted that Factual Mutual estimated the damages for repairing and replacing the damage allegedly caused by the pipes supplied by Perma Pipe will cost over $50,000,000. (Exhibit C)

19. Liberty agreed to defend Perma Pipe under a full reservation of rights.

## THE UNDERLYING LAWSUITS

20. On February 12, 2012 the REGENTS OF THE UNIVERSITY OF CALIFORNIA, a California Constitutional Corporation, filed a lawsuit against RMF ENGINEERING, INC., a Maryland corporation; RANGER PIPELINES INCORPORATED, a California corporation; PERMA-PIPE, INC., in Superior Court of the state of California for the City and County of San Francisco, Case No. CGC-12-518341 ("the Regents Lawsuit")(A copy of the Regents Lawsuit is attached as Exhibit D).

21. The Regents Lawsuit claimed the lawsuit arose out of the design and construction of the Mission Bay Utilities and Distribution Phase 1 Project at the UCSF - Mission Bay campus of The Regents. (Exhibit D).

22. The Regents Lawsuit alleges that on or about September 12, 2006, The Regents and RMF entered into an Executive Design Professional Agreement Version B (the "Regents/RMF Agreement"), pursuant to which RMF agreed to act as the Executive Design Professional for the Project. (Exhibit D)

23. The Regents Lawsuit alleges that on or about September 27, 2007, The Regents and Ranger entered into an agreement (the "Regents/Ranger Agreement"), pursuant to which Ranger agreed to, among other things, build the utility pipe and vault system for the Project. (Exhibit D).

24. The Regents Lawsuit alleged that Perma-Pipe manufactured the piping systems specified for the Project by RMF, including the Polytherm pipe used for the high temperature hot water ("HTHW") piping system, and Polytherm pipe and Multi-Therm pipe used in other Project systems. Perma-Pipe also manufactured, supplied and/or recommended various components associated with the piping system, including joints and wrapping, and provided instructions and training on its piping systems. (Exhibit D)

25. The Regents Lawsuit alleges that in late February 2009, a large plume of steam was observed coming through a manhole cover in the center of the roadway on Nelson Rising Lane, which is located on the Campus. Subsequent investigation revealed that steam was emanating from one of the system's concrete vaults, which was filled with boiling water. Ultimately, further investigation revealed that water had entered into and adversely impacted the piping system, and that the piping, insulation, vaults and other systems such as the electrical conduit system were badly damaged and in catastrophic failure, such that they were completely unfit for further use even though they were merely months into what should have been a useful life of many decades. (Exhibit D)

26. The Regents Lawsuit alleges that due to the damage to the pipes and the vaults and other property, The Regents were forced to install a temporary utility plant and associated piping and will be required to completely remove and replace the Project's damaged piping and

associated systems and infrastructure and other property, and conduct extensive rehabilitation of the vaults, the total cost of which is expected to exceed $35 million. (Exhibit D)

27. The Regents Lawsuit alleges the defendants are liable under theories of negligence, breach of contract, breach of express warranty, and breach of implied warranty. (Exhibit D).

28. On or about April 12, 2012, RMF Engineering filed a cross complaint against PERMA-PIPE, Inc., in the Regents lawsuit (the "Regents Cross Claim")(A copy of the Cross Complaint is attached as Exhibit E).

29. The RMF Cross Complaint sought indemnity from Perma-Pipe for any liability RMF may have to The Regents. (Exhibit E)

30. On June 4, 2012, the Regents filed an amended complaint in the Regents Lawsuit adding a claim for strict product liability (Copy of the Regents Lawsuit Amended Complaint is attached as Exhibit F).

31. On February 9, 2012, Lexington Insurance Company filed a Complaint against RMF Engineering in the Superior Court of the State of California for the County of San Francisco, Case No. CGC-12-5181. ("Lexington Complaint")(A copy of the Lexington Complaint is attached as Exhibit G)

32. The Lexington Complaint alleges that Lexington was a property insurer for the Regents. (Exhibit G)

33. The Lexington Complaint makes the same general allegations as the Regents Lawsuit. (Exhibit G)

34. On April 12, 2012, RMF filed a cross claim in the Lexington Lawsuit against Ranger Pipelines and Perma-Pipe and other seeking indemnity if RMF is held liable ("Lexington Cross Claim)(A copy of the Lexington Cross Complaint is attached as Exhibit H).

35. On July 10, 2012, the Superior Court for the state of California, for the County of San Francisco consolidated the Regents Lawsuit, the Regents Cross Claim, the Lexington Lawsuit and the Lexington Cross Claim.

36. Pursuant to the reservation of rights issued in March 2011, Liberty allowed Perma-Pipe to choose Laurie & Brennan, LLP as its independent counsel to defend Perma Pipe in the Regents Lawsuit the Regents Cross Claim, the Lexington Lawsuit and the Lexington Cross Claim.

## LIBERTY EXPRESSLY WITHDRAWS AND WAIVES ALL RESERVATION OF RIGHTS

37. On October 8, 2012, Liberty sent a letter to Perma-Pipe expressly withdrawing all reservation of rights; thereby agreeing to pay all defense costs arising out of the Regents Lawsuit, Regents Cross Claim, Lexington Lawsuit, and Lexington Cross Claim, and agreeing to pay any indemnity up to the policy limit of $1 million per occurrence (A copy of the October 8, 2012 Letter is attached as Exhibit I).

38. The October 8, 2012 Letter from Liberty informed Perma-Pipe that it was now controlling the defense of the Regents lawsuit and Ranger cross claim and was terminating Perma-Pipe's choice of counsel, Laurie & Brennan, LLP, and assigning the defense of the Regents Lawsuit, the Regents Cross Claim, the Lexington Lawsuit, and the Lexington Cross Claim to a panel counsel law firm retained expressly by Liberty, that was unknown to Perma-Pipe, and that had no previous client relationship with Perma-Pipe. (Exhibit I).

## PERMA-PIPE REPEATEDLY INFORMS LIBERTY OF A CONTINUING CONFLICT

39. On October 31, 2012, Perma-Pipe sent a letter to Liberty stating that a serious conflict still existed between Perma-Pipe and Liberty. Perma-Pipe explained that although Liberty Mutual had waived any reservation of rights; under controlling Illinois law, a serious conflict still existed due to the real possibility of a judgment or settlement in far in excess of the Liberty policy limits, mandating that Perma-Pipe be allowed to continue to retain independent counsel at Liberty's expense (A copy of October 31, 2012 Letter is attached as Exhibit J).

40. Due to this conflict, Perma-Pipe requested that Liberty deactivate its retention of the insured panel counsel, Archer Norris, and reappoint Laurie and Brennan as independent counsel. (Exhibit J)

41. The October 31, 2012, letter to Liberty specifically noted that on January 14, 2011, the Seventh Circuit Court of Appeals in *R.C. Wegman Const. Co. v. Admiral Ins. Co.*, 629 F.3d 724 (7th Cir. 2011) held that under Illinois law, a conflict of interest allowing for the appointment of independent counsel under *Peppers* exists when there is a non-trivial possibility that a judgment or settlement will be in excess of the insurance coverage limit. (Exhibit J)

42. Perma-Pipe explained to Liberty the *Wegman* Court stated that the conflict principle under *Peppers* is also the same when the conflict arises from the relation of the policy limit to the insured's potential liability. (Exhibit J).

43. Liberty never responded to the October 2012 letter.

44. On January 29, 2013, Perma-Pipe again wrote to Liberty demanding the re-appointment of Laurie & Brennan, LLP as Perma-Pipe's independent counsel for defense of the Regents Lawsuit, the Regents Cross Claim, the Lexington Lawsuit, and the Lexington Cross Claim (A copy of January 29, 2013 Letter is attached as Exhibit K)

8

45. The January 29, 2013, Letter attached a recent judgment dated December 12, 2012 from the United States District Court for the Northern District of Illinois addressing an indistinguishable situation. Consistent with the analysis Perma-Pipe had described in its October 2012 letter, the District Court in this case found that an insured has the right to select independent counsel in a situation such as Perma-Pipe and Liberty (Exhibit K).

46. Perma-Pipe explained in the letter that in *Addus Health Case v Auto Owners Insurance, Corp.*, 11 CV 3788 ("the Addus Complaint"), Addus brought a complaint against its insurer, Auto Owners, in the United States District Court for the Northern District of Illinois. As alleged in the Addus Complaint, Addus had been sued for personal injuries by the estate of Patricia Carney in Illinois state court regarding an auto accident between Patricia Carney and an Addus employee, Whitney Clendenin ("the Carney underlying case"). The Addus Complaint alleges that Auto Owners had a limit of $100,000 per occurrence for bodily injury. In light of the non-trivial possibility of verdict greatly in excess of the policy limits, Addus requested that its preferred independent defense counsel be assigned the defense of the Carney underlying case with such defense to be paid by Auto Owners. There was no reservation of rights by Auto Owners. Auto Owner rejected Addus' request and retained its panel counsel to defend Addus and Clendenin (A copy of the Addus Complaint is attached as Exhibit L).

47. Significantly, Addus demanded that it be allowed to select its own counsel based on the conflict, as required under *RC Wegman v. Admiral*. (Exhibit L)

48. On December 12, 2012, the District Court ruled in favor of Addus. "The court declared: (1) A conflict of interest exists between Defendant Auto-Owners Insurance Company, on the one hand, and Plaintiffs Addus Healthcare, Inc., and Whitney Clendenin, on the other, with respect to Auto Owners defense of Addus and Clendenin in Carney v. Crady, No. 2010 L

9

120 (Cir. Ct. Williamson Cnty., Ill.); and (2) Due to the conflict of interest, Addus and Clendenin have the right to select independent counsel at Auto-Owners expense to defend them in the underlying Carney suit." (emphasis added)(A copy of Addus Judgment is attached as Exhibit M).

49. In the January 29, 2013, letter, Perma-Pipe explained there is no difference between Addus and Perma-Pipe's request for the selection of independent counsel.

50. The January 29, 2013 letter specifically noted that failure to reappoint Laurie & Brennan, LLP would be seen as "bad faith" under Illinois insurance law. The January 29, 2013 letter specifically noted that absent reappointment of Perma Pipe's chosen counsel, Perma would seek all available relief, including judicial intervention.

51. As a result of Liberty's refusal to reappoint independent counsel of Laurie & Brennan, Perma-Pipe continues to retain its independent counsel of Laurie & Brennan, LLP to monitor and protect its interest in the underlying cases. Perma-Pipe expects to incurs costs and attorney's fees exceeding $75,000 to continue to retain Laurie and Brennan, LLP to protect its interests in the underlying lawsuits if relief is not granted.

52. On February 14, 2013, Michael Gregg attorney at the law firm of Merlo Kanofsky & Gregg, in Chicago, Illinois wrote Perma Pipe a letter stating that he has been retained by Liberty and would respond to the January 29, 2013 letter from Perma Pipe to Liberty. Mr. Gregg noted in his letter that Perma-Pipe had requested a response by February 12, 2013. Mr. Gregg requested addition time and indicated that he or Liberty would likely respond next week (A copy of the February 14, 2013 letter is attached as Exhibit N)

53. Rather than provide a response as promised in the February 14, 2013 letter, Liberty inappropriately filed a preemptive declaratory judgment action in the United States

10

District Court for the Northern District of California, Case No. 13 0908. (A copy of the California Lawsuit is attached as Exhibit O)(The "Liberty DJ").

54. Neither Liberty nor Perma-Pipe are citizens of California, and the insurance policy was issued to Perma-Pipe in Illinois. The insurance policies contain an Illinois Endorsement. (A copy of the of the 2008 to 2010 policy is attached as Exhibit P).

## COUNT I-BREACH OF CONTRACT

55. Perma-Pipe re-alleges and incorporate by reference the allegations contained in Paragraphs 1-54 as though fully set forth in Paragraph 55.

56. There is a non-trivial probability that Perma-Pipe could be liable for a judgment in the Regents, Lawsuit, Regents Cross Claim, the Lexington Lawsuit, and the Lexington Cross Claim that is far in excess of the Liberty policy limits.

57. Liberty has already expressly recognized that the Regents lawsuit seeks $50 million for repair and replacement of pipe sold by Perma-Pipe and associated property damages and the policy limits for indemnification are only $1 million.

58. As such, a conflict of interest exists between the Plaintiff and Liberty with respect to defense of the Regents Lawsuit, the Regents Cross Claim, the Lexington Lawsuit, and the Lexington Cross Claim as was recognized by the Seventh Circuit in *Wegman* and the Northern District of the Illinois in *Addus* for the defense and indemnity of Perma-Pipe in the underlying cases.

59. The duty to defend an insured under a general liability policy of insurance requires that when a conflict of interest exists, an insurer must allow the insured the right to choose counsel to defend it, with such fees to be paid by the insurer.

11

60. In order to properly protect their interest in light of the conflict, Perma-Pipe is entitled to the retention of independent counsel at Liberty's expense to defend it in the underlying suits.

61. On several occasions as detailed above, Perma-Pipe has demanded that Liberty allow Perma-Pipe to retain independent counsel at Liberty's expense to defend them in the underlying suits. Liberty has refused.

62. Liberty has thus breached the terms of an insurance policy by refusing to perform its duty to defend under a conflict of interest by refusing to all Perma-Pipe to choose its counsel for defense of the Regents, Lawsuit, Regents Cross Claim, the Lexington Lawsuit, and the Lexington Cross Claim.

63. Perma-Pipe has performed all necessary conditions under the policy.

## COUNT II-SECTION 155 BAD FAITH

64. Perma-Pipe re-alleges and incorporate by reference the allegations contained in Paragraphs 1-63 as though fully set forth in Paragraph 64.

65. 215 ILCS 5/155 concerning "bad faith" under an insurance policy states as follows:

> (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
>> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>>
>> (b) $60,000;
>>
>> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which

the company offered to pay in settlement of the claim prior to the action.

(2) Where there are several policies insuring the same insured against the same loss whether issued by the same or by different companies, the court may fix the amount of the allowance so that the total attorney fees on account of one loss shall not be increased by reason of the fact that the insured brings separate suits on such policies.

66. The failure of Liberty to recognize controlling Illinois law that *requires* Liberty to allow Perma-Pipe to select independent counsel to defend it in the underlying lawsuits due to the fact that even Liberty recognized that there is a non-trivial possibility of a judgment far in excess of the limits of insurance in the Liberty policy, the Regents Cross Claim, the Lexington Lawsuit, and the Lexington Cross Claim is vexatious and unreasonable.

67. When an insured must bring a declaratory action against the insurer to enforce its right to coverage in an underlying lawsuit, the insured may recover section 155 attorney's fees incurred in both the underlying suit and the declaratory action. *Shell Oil v. AC & S, Inc*, 271 Ill.App.3d 898, 909, 208 Ill.Dec. 586, 649 N.E.2d 946 (5th Dist. 1995); *Verbaere v. Life Investors Ins. Co. of America*, 226 Ill.App.3d 289, 300, 168 Ill.Dec. 353, 589 N.E.2d 753 (1st Dist. 1992).

WHEREFORE, Perma-Pipe Inc., respectfully requests that this Court find:

(1) A conflict of interest exists between Defendant Liberty Surplus Insurance Company, on the one hand, and Plaintiff Perma-Pipe, Inc., on the other, with respect to Liberty Surplus Insurance Company's defense of Perma-Pipe in the Regents Lawsuit, the Regents Cross Claim, the Lexington Lawsuit, and the Lexington Cross Claim;

(2) A breach of the terms of the insurance policy has occurred due to Liberty's refusal to recognize a conflict of interest that allows Perma-Pipe to appoint independent counsel under the duty to defend of the policy, with such fees to be paid by Liberty.

(3) Due to the conflict of interest, Perma-Pipe has the right to select independent counsel at Liberty Surplus Insurance Company's expense to defend them in the underlying the Regents Cross Claim, the Lexington Lawsuit, and the Lexington Cross Claim; and

(4) Due to Liberty's unreasonable refusal to appoint independent counsel to defend Perma-Pipe in the Regents Lawsuit, the Regents Cross Claim, the Lexington Lawsuit, and the Lexington Cross Claim, Liberty is liable under section 155 and is responsible for Perma-Pipe's attorneys' fees and costs in this action and all of Perma-Pipe's attorney fees for retention of independent counsel that were not previously paid; and

(5) All other equitable relief that is just.

Respectfully Submitted,

PERMA-PIPE INC.,

s/Craig G. Penrose
Craig Penrose
Senior Counsel
Laurie & Brennan, LLP
Two North Riverside Plaza
Suite 1750
Chicago, IL 60606

312 234-0305
cpenrose@lauriebrennan.com