**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PERMA-PIPE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **13 C 2898** |
| | ) | |
| **v.** | ) | |
| | ) | **Judge Ronald A. Guzmán** |
| **LIBERTY SURPLUS INSURANCE** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff sues defendant for breach of contract and the Illinois Insurance Code.  Defendant has filed a motion to dismiss this case in favor of a suit that was filed before it in the Northern District of California or to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404.  For the reasons set forth below, the Court denies the motion.

**<u>Facts</u>**

Defendant, a New Hampshire corporation with its principal place of business in Massachusetts, issued commercial general liability policies to plaintiff, a Delaware corporation that manufactures pre-insulated piping systems in Illinois, for the period November 1, 2007 to March 31, 2010.  (Compl. ¶¶ 2-4, 8-9.)  Each policy has a per-occurrence limit of $1 million and an aggregate limit of $2 million.  (*Id.* ¶ 10.)

On October 26, 2010, the University of California sent a letter to Ranger Pipelines, Inc., a contractor that had installed plaintiff's pipes on the University's Mission Bay campus, claiming that Ranger was liable for damages caused by the pipes' "catastrophic failure."  (*Id.*, Ex. A, Letter from

Univ. to Ranger (Oct. 26, 2010).) Ranger, in turn, sent a letter to plaintiff demanding indemnification for any damages Ranger had to pay the University. (*Id.*, Ex. B, Letter from Ranger to Pl. (Jan. 25, 2011).) The University's insurer estimated that the cost of repairs would exceed $50 million. (Compl. ¶ 18.)

On March 1, 2011, defendant told plaintiff that it would "continue to handle [the claims against plaintiff arising from the University project] under a reservation of rights." (*Id.*, Ex. C, Letter from Def. to Pl. at 7 (Mar. 1, 2011).) Pursuant to the reservation of rights, defendant allowed plaintiff to choose the counsel that would defend it. (Compl. ¶ 36.)

On February 9, 2012, one of the University's insurers, Lexington Insurance Company, sued RMF Engineering Inc., the project designer, in California state court to recover the damages caused by the pipe failure. (*Id.* ¶¶ 31-33.) A few days later, the University filed a separate suit in California state court against RMF, Ranger and plaintiff, asserting the same claims and seeking the same relief as in the Lexington suit. (*Id.* ¶¶ 20-27.) RMF filed a cross-claim for indemnification against plaintiff in each suit. (*Id.* ¶¶ 28-29, 34.)

On October 8, 2012, defendant sent a letter to plaintiff withdrawing its reservation of rights, agreeing to pay all defense costs arising out of the California lawsuits and agreeing to pay any indemnity up to the policy's per-occurrence limit of $1 million. (*Id.* ¶ 37.) Defendant also told plaintiff that, because it was now controlling plaintiff's defense, it was terminating the counsel chosen by plaintiff and assigning counsel of defendant's choosing. (*Id.* ¶ 38.)

On October 31, 2012, plaintiff sent defendant a letter asserting that "under controlling Illinois law, a serious conflict still exists due to the real possibility of a judgment or settlement in excess of the Liberty policy limits, mandating that Perma-Pipe be allowed to continue to retain

independent counsel at Liberty's expense." (*Id.*, Ex. J, Letter from Pl. to Def. at 2 (Oct. 31, 2012))

(emphasis original) (footnote omitted). Plaintiff concluded the letter by saying:

> If Liberty fails to notify Perma-Pipe and Laurie & Brennan [plaintiff's chosen counsel] within two weeks of receipt of this correspondence that it agrees to provide independent counsel of Perma-Pipe's choosing, <u>and</u> deactivate its retention of Archer Norris, Perma-Pipe will take whatever action is necessary to protect its rights and interests. This may include filing a suit seeking to compel Liberty to agree to pay for independent counsel and to recover any associated costs or fees.

(*Id.* at 5) (emphasis original). Liberty did not respond to the letter. (Compl. ¶ 43.)

On January 29, 2013, defendant wrote a second letter to defendant, enclosing a recent Illinois case concerning a conflict between an insurer and its insured and reiterating its demand that it be permitted to choose its own counsel. (*Id.*, Ex. K, Letter from Pl. to Def. (Jan. 29, 2013).) Plaintiff asked defendant to respond to the letter by February 12, 2013. (*Id.* at 2.)

On February 14, 2013, defense counsel told plaintiff that he would confer with defendant "in the next week," and defendant would "provide a response [to plaintiff] shortly thereafter." (*Id.*, Ex. N, Letter from Def. to Pl. (Feb. 14, 2013).)

On February 28, 2013, defendant filed a one-count complaint against plaintiff in the Northern District of California seeking a declaration that it "has the right to appoint and control Perma-Pipe's defense counsel . . . and that it is not obligated to pay counsel selected by Perma-Pipe from and after the date of the agreement to defend without reservation of rights." (*Id.*, Ex. O, Compl. ¶ 19, *Liberty Surplus Ins. Corp. v. Perma-Pipe, Inc.*, No. C 13 0908 (N.D. Cal. Feb. 28, 2013).)

On April 17, 2013, plaintiff filed this suit, seeking damages for defendant's alleged breach of the insurance policy and the Illinois Insurance Code. Defendant contends that this suit should be dismissed under the first-to-file rule or transferred to the California court.

3

**Discussion**

Generally, a federal court will dismiss a suit that involves substantially the same parties, claims and available relief as a suit that is already pending in another federal court. *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993). However, when the two cases "involve a declaratory judgment action and a mirror-image action seeking coercive relief[,] we ordinarily give priority to the coercive action, regardless of which case was filed first." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010); *see Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995) (stating that "[t]his circuit does not rigidly adhere to a 'first-to-file rule,' and the mere fact that Trippe first filed the action in Illinois does not give it an absolute right to choose the forum") (citation omitted); *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 750 (7th Cir. 1987) ("The federal declaratory judgment is not a prize to the winner of the race to the courthouse.") (quotations and alteration omitted). Such is the case here. Though defendant's California suit was filed first, it asserts a single claim for declaratory relief that mirrors the breach of contract claim, which seeks coercive relief, that plaintiff asserts in this suit. Accordingly, the first-to-file rule is not a basis for dismissal.

Alternatively, defendant asks the Court to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a). To succeed on this motion, defendant must show that (1) venue is proper here; (2) venue and jurisdiction would be proper in the Northern District of California; and (3) "the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice." *Simonian v. Hunter Fan Co.*, No. 10 C 1212, 2010 WL 3975564, at *1 (N.D. Ill. Oct. 7, 2010); *see Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (noting that the movant bears the burden of proof on these factors). Because the parties

4

do not dispute the first two elements, the Court will consider only whether a transfer will serve the private and public interests set forth in the last element.

The private interest factors include: "(1) plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; and (4) the convenience of the witnesses and parties." *Simonian*, 2100 WL 3975564, at *2. Plaintiff, an Illinois citizen, chose to litigate here, a choice that is entitled to substantial deference. *See In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.") (quotation omitted). The material event, for purposes of this lawsuit, is defendant's refusal to allow plaintiff to choose its own counsel, a decision that was apparently made by a claims specialist and a coverage officer located in New York and defense counsel located in Illinois. (*See* Compl., Ex. C, Letter from Def. to Pl. (Mar. 1, 2011); *id.*, Ex. I, Letter from Def. to Pl. (Oct. 8, 2012); *id.*, Ex. N, Letter from Def. to Pl. (Feb. 14, 2012).) With respect to witnesses, defendant contends that it would likely need its California lawyers, as well as the coverage officer and claims specialist from New York, to testify in this case. Defendant does not, however, provide the substance of the lawyers' testimony, explain why it is necessary or why, given the lawyers' relationship to defendant, they would not travel to Illinois to provide it. Absent such information, their asserted involvement in this case provides no support for defendant's motion. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986) ("The movant . . . has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient."); *Mattson ex rel. Mattson v. Gerry Wood Prods Co.*, No. 95 C 2314, 1997 WL 158334, at *1 (N.D. Ill. Mar. 31, 1997) ("Generally, proper consideration of th[e] [convenience-to-witnesses] factor requires the parties to identify with specificity the witnesses it

intends to call as well as the *general content* of their proposed testimony.") (emphasis original).  In short, the balance of the private factors favors keeping the case here.[1]

The same is true of the public interest factors, which include "such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Heller*, 883 F.2d at 1293.  This case would likely get to trial here about a year earlier than it would if it were transferred to the Northern District of California. *See* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics.aspx (search "Reports – March 2013, District Courts) (last visited Sept. 10, 2013) (showing median filing-to-trial time of 34.5 months in the Northern District of Illinois and 46.4 months in the Northern District of California).  Moreover, this Court has more familiarity with Illinois law, which likely governs this dispute. *See United Farm Family Mut. Ins. Co. v. Frye*, 887 N.E.2d 783, 788 (Ill. App. Ct. 2008) (stating that, absent a choice-of-law provision, Illinois' choice-of-law rules, which instruct courts to apply the law of the state with most significant contacts to the insurance contract, *i.e.*, where the subject matter of the contract is located, the contract was delivered, the insured and insurer are domiciled, the last act giving rise to the contract occurred and the contract is to be performed, determine which state's law applies); (*see* Compl. ¶¶ 8-9, 13-34 & Ex. P, Policy (alleging that the property damage that is the subject of the insurance policy occurred in California, defendant is domiciled in Massachusetts, the policy was issued to plaintiff, which is located in Illinois, through an Illinois underwriter and an Illinois insurance broker and defendant communicated its decisions

---

[1] It is not clear where any relevant documents are located, but because they are easily transported, their location carries little weight.  *See Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 840 (N.D. Ill. 2009) ("In this day and age, transferring documents from one district to another is commonplace and, given the widespread use of digital imaging in big-case litigation, no more costly than transferring them across town.").

about the policy through letters sent to plaintiff in Illinois)). Finally, the related litigation, defendant's mirror-image declaratory judgment suit filed in the Northern District of California, has just been transferred to this District and Court. Thus, the public interest factors also favor litigating the case here. Accordingly, defendant's motion to transfer is denied.

### Conclusion

For the reasons set forth above, the Court denies defendant's motion to dismiss or transfer [13].

**SO ORDERED.**                              **ENTERED: September 24, 2013**


_____
**HON. RONALD A. GUZMAN**
**United States District Judge**

7