UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PERMA-PIPE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 2898 |
| | ) | |
| vs. | ) | Judge Ronald A. Guzmán |
| | ) | |
| LIBERTY SURPLUS INSURANCE CORPORATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Perma-Pipe, Inc. has sued Liberty Surplus Insurance Company for breaching the parties' insurance contract (Count I) and for doing so in bad faith in violation of the Illinois Insurance Code (Count II). Perma-Pipe has filed a Federal Rule of Civil Procedure ("Rule") 56 motion for summary judgment on the contract claim. For the reasons set forth below, the Court grants the motion.

**Facts**

Perma-Pipe purchased a commercial general liability policy from Liberty with a per occurrence limit of $1 million and an aggregate limit of $2 million for the period November 1, 2008 through March 31, 2010. (Pl.'s LR 56.1(a) Stmt. ¶¶ 4-5.)[1] The policy states that Liberty "will pay those sums that [Perma-Pipe] becomes legally obligated to pay as damages because of . . . 'property damage'" to which the policy applies, and "will have the right and duty to defend [Perma-Pipe] against any 'suit'" seeking such damages. (*Id.* ¶¶ 6-7.)

---

[1]Because Liberty did not respond to Perma-Pipe's LR 56.1 Statement of Facts, it is deemed to have admitted the facts Perma-Pipe asserts in the Statement. *See* Local Rule 56.1(b)(3).

On October 26, 2010, the University of California told Perma-Pipe that pipes it had manufactured had suffered a "catastrophic failure" and the University would seek to hold Perma-Pipe liable for the resulting damage. (*Id.* ¶ 18.) Liberty agreed to defend Perma-Pipe against the University's claims but reserved its right to contest coverage. (*See* Pl.'s LR 56.1 Stmt., Ex. 2, Moore Aff., Ex. C, Letter from Liberty to Perma-Pipe (Oct. 8, 2012).) Because the reservation created a conflict of interest between the parties, Perma-Pipe selected independent counsel to defend it. (*Id.*)

In February 2012, Perma-Pipe was named as a defendant in two lawsuits arising out of the pipe failure, one filed by the University seeking more than $35 million and the other filed by a subrogated insurance carrier, seeking more than $5 million. (Pl.'s LR 56.1 Stmt. ¶ 20.)

On October 8, 2012, Liberty sent Perma-Pipe a letter saying:

> . . . . [Liberty] immediately withdraws all bases on which it previously reserved its right to decline to continue to defend or provide insurance coverage to Perma-Pipe in the [University's] lawsuit. Henceforth, [Liberty] will defend Perma-Pipe in [that] lawsuit without reservation and provide it with insurance coverage up to [the] policy . . . limits of liability. . . . [A]s a result of [Liberty's] withdrawal of all of its reservations of right, [it] will hereafter exercise its right to defend Perma-Pipe through [Liberty's] choice of defense counsel.
>
> . . . .
>
> . . . . [Liberty], therefore, appoints Kenneth C. Ward of the law firm of Archer Norris, Walnut Creek, Ca. to defend Perma-Pipe in the . . . lawsuit. . . . [Liberty's] obligation to pay for the Laurie & Brennan Firm's fees and expenses is terminated as of the date of this letter.

(*Id.*, Ex. 2, Moore Aff., Ex. C, Letter from Liberty to Perma-Pipe (Oct. 8, 2012).)

On October 31, 2012, Perma-Pipe responded as follows:

2

> Consistent with Illinois law, Liberty's initial reservation of rights mandated that [Perma-Pipe] be allowed to choose its own counsel to defend itself . . . with the defense costs paid by Liberty. . . . Perma-Pipe chose its long time counsel, Laurie & Brennan, LLP to defend the lawsuits. . . .
>
> . . . .
>
> Although Liberty . . . has waived any reservation of rights, under controlling Illinois law, a serious conflict <u>still exists</u> due to the real possibility of a judgment or settlement in excess of the Liberty policy limits, mandating that Perma-Pipe be allowed to continue to retain independent counsel at Liberty's expense. Due to this conflict, Perma-Pipe requests that Liberty deactivate its retention of . . . Archer Norris, and reappoint Laurie & Brennan as independent counsel.

(*Id.*, Ex. D, Letter from Perma-Pipe to Liberty (Oct. 21, 2012)) (emphasis original)(footnote omitted). On January 29, 2013, Perma- Pipe reiterated its request that "Liberty acknowledge and accept Perma Pipe's right to appoint its own counsel (Laurie & Brennan, LLP) on or before February 12, 2013." (*Id.*, Ex. E, Letter from Perma-Pipe to Liberty (Jan. 29, 2013).) Liberty failed to do so, and this suit followed.

## **Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and that movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable fact finder could find for the non-moving party. *Id.*

3

Before we can reach the merits of the breach of contract claim, we must determine whether this case is governed by the law of Illinois, as Perma-Pipe contends, or that of California, as Liberty contends.[2] "A federal court sitting in diversity looks to the conflict-of-laws rules in the state jurisdiction in which it sits in order to choose the substantive law applicable to the case," in this case Illinois. *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995).

Perma-Pipe argues that this suit arises from an insurance contract, and thus Illinois' choice-of-law principles for such contracts apply here. Liberty contends that it is the nature of the underlying litigation, not this one, that dictates the choice-of-law rules. Because the underlying litigation is a dispute over property damage, Liberty contends that Illinois' choice-of-law rules for tort suits apply.[3] However, Liberty offers no authority for its assertion that the choice-of-law for one case is dictated by the nature of another, and the Court is aware of none. Therefore, the Court will apply Illinois' choice-of-law principles for insurance contracts to this suit.

According to those principles, if the insurance contract does not contain a choice-of-law provision, the law of the state with the most significant contacts to the dispute governs. *See Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E.2d 842, 845 (Ill. 1995). Perma-Pipe argues that there is no need to consider significant contacts here because the policy, as illustrated by Endorsement 26, contemplates that Illinois law will govern. Endorsement 26 states

---

[2]The parties agree that a choice-of-law analysis is required because that determination will impact the result of this case. *See Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007) (stating that such an analysis is necessary "only when a difference in law will make a difference in the outcome [of the suit]").

[3]Oddly, after framing the dispute as one involving property damage, Liberty urges the Court to use the choice-of-law rules for personal injury claims. (*See* Def.'s Resp. Mot. Summ. J. at 8.)

that Liberty "appoints the Illinois Director of Insurance . . . as agent for service of process in any action arising out of this insurance contract." (*See* Pl.'s LR 56.1 Stmt., Ex.1, Compl., *Liberty Surplus Ins. Corp. v. Perma-Pipe, Inc.*, No. 13 C 908 (N.D. Cal.), Ex. A, Policy, Endorsement 26.) Because that endorsement is required by the Illinois Insurance Code, plaintiff concludes that the parties intended for Illinois law to apply. *See* 215 Ill. Comp. Stat. 5/445(10) (requiring out-of-state surplus insurers to include in their policies "a provision designating the [Illinois Insurance] Director and his successors . . . [as the person] upon whom may be served all lawful process in any action, suit or proceeding arising out of such insurance").

As the Restatement of Conflicts notes, however, parties to a contract typically do not manifest their intention to choose a governing law by making a single, oblique reference to it. *See* Restatement (Second) of Conflict of Laws, § 187 cmt. a. ("When the parties have made . . . a choice [of law], they will usually refer expressly to the state of the chosen law in their contract, and this is the best way of insuring that their desires will be given effect."). Given that reality, the parties' nod to Illinois law on the last page of the last endorsement to a sixty-nine-page insurance policy does not support the inference that they agreed Illinois law would govern.

Because the insurance contract is silent with respect to choice of law, the Court considers the contacts that are most significant to it, including "the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract." *Lapham-Hickey*, 655 N.E.2d at 845 (quotation omitted). There is no dispute that the subject matter of the contract, *i.e.*, the risk Liberty insured, was nationwide. (Pl.'s LR 56.1 Stmt. ¶ 9.) Thus, the first contact carries little weight. *See Employers Ins. of Wausau v. Ehlco Liquidating*

*Trust*, 723 N.E.2d 687, 694 (Ill. App. Ct. 1999) (asserting that the location-of-the-subject-matter factor "is entitled to little weight when the subject matter or risk is located in more than one state"); Restatement (Second) Conflicts of Laws § 193 cmt. b (noting that "the location of the risk has less significance . . . where the policy covers a group of risks that are scattered throughout two or more states."). There is also no dispute that Perma-Pipe is domiciled in Illinois, and that the last acts giving rise to the contract occurred here. (Pl.'s LR 56.1 Stmt. ¶¶ 10, 12, 14-17); *see Emerson Elec. Co. v. Aetna Cas. & Sur. Co.*, 743 N.E.2d 629, 641 (Ill. App. Ct. 2001) ("[T]ypically, [the] last act required to make policy effective takes place in 'the state where the policy is delivered and the premiums are paid'") (quoting 4 Appleman on Insurance 2d § 21.6 at 278 (1998)). Moreover, because the policy does not state where performance will occur, *i.e.*, where claims will be paid, it is presumed to be where the insured is located, *i.e.*, Illinois. *Id.* (citing 2 Couch on Insurance 2d § 16:11 at 497). Thus, though Illinois is not the only state that has contact with the policy – the damage and lawsuit for which Perma-Pipe seeks coverage are in California, and Liberty is located in Massachusetts – Illinois has the most significant contacts with it. The Court, therefore, holds that Illinois law governs.

Turning to the merits, Perma-Pipe argues that Liberty breached its contractual duty to defend Perma-Pipe against the suits arising from the pipe failure at the University. Under Illinois law, an insurer has a duty to defend if the complaint in the underlying action alleges facts potentially within the policy's coverage. *Standard Mut. Ins. Co. v. Lay*, 989 N.E.2d 591, 596 (Ill. 2013). If the insurer believes there is no coverage, it must: "(1) defend the suit under a reservation of rights; or (2) seek a declaratory judgment that there is no coverage." *Id.* If, however, there is a conflict between the interests of the insurer and the insured, the insurer must pay for independent counsel selected by the

6

insured. *Md. Cas. Co. v. Peppers*, 355 N.E.2d 24, 31 (Ill. 1976). A conflict "does not arise merely because the insurer has an interest in negating coverage." *Nat'l Cas. Co. v. Forge Indus. Staffing Inc.*, 567 F.3d 871, 874 (7th Cir. 2009). Neither, however, is one absent simply because both parties would benefit from the insured's exoneration in the underlying suit. *Id.* Instead, given their "shared interest in a finding of no liability", there is a conflict if "'the insurer's interest would be equally protected by a finding that would not be in the interest of the insured.'" *Id.* at 875 (quoting *Am. Family Mut. Ins. Co. v. W.H. McNaughton Builders, Inc.*, 843 N.E.2d 492, 499 (Ill. 2006)); *see Am. Family Mut. Ins. Co. v. Westfield Ins. Co.*, 962 N.E.2d 993, 999 (Ill. App. Ct. 2011) (stating that a conflict exists if "the interest of the insurer would be furthered by providing a less than vigorous defense" to the insured in the underlying lawsuit). "The usual conflict of interest involves the insurance company's denying coverage . . . , but the principle is the same when the conflict arises from the relation of the policy limit to the insured's potential liability . . . ." *R.C. Wegman Constr. Co. v. Admiral Ins. Co.*, 629 F.3d 724, 729 (7th Cir. 2011). In other words, because an insurer's exposure is capped by the policy limit, it may decide to try claims exceeding the limit, hoping that the resulting liability, if any, will be less, despite the risk that its insured could be found liable for an amount far greater than the limit. *Id.* at 728. Thus, the *Wegman* court said, a conflict exists when there is "a nontrivial probability" of an excess judgment in the underlying suit. *Id.* at 730.

There is no dispute that Perma-Pipe is being sued for more than $40 million and the Liberty policy limit is $1 million per occurrence. (*See* Pl.'s LR 56.1(a) Stmt. ¶¶ 5, 20.) Thus, as in *Wegman*, there is a "nontrivial probability" that there will be an excess judgment in the underlying suit.

7

Liberty argues, however, that the facts of *Wegman* make it inapposite. The plaintiff in *Wegman*, who was insured by defendant for up to $1 million per occurrence, was sued for injuries sustained by a worker at a Wegman job site. *Id.* at 725. The insurer chose to defend Wegman, and during the course of the suit, learned that the worker's injuries were permanent and severe, and he was seeking a $6 million settlement. *Id.* at 726-27. The insurer did not, however, tell Wegman about its exposure to an excess judgment until the eve of trial, which was too late for Wegman to invoke its excess coverage. *Id.* at 727. Unlike Wegman, Liberty argues, Perma-Pipe knew about the potential for an excess judgment from the start of the underlying litigation, and it could and did notify its excess carriers. Therefore, Liberty asserts, "the conflict present in *Wegman* is not at issue here." (Def.'s Resp. Mot. Summ. J. at 11.)

The Court disagrees. First, Liberty offers no evidence to support its assertions about the amount of Perma-Pipe's excess coverage or Perma-Pipe's communications with its excess carriers about the underlying litigation. Absent evidentiary support, these assertions are meaningless. *See Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993) (stating that "a party seeking to avoid summary judgment may not establish a dispute of material fact with unsubstantiated assertions"). Second, because excess insurance applies only after primary coverage has been exhausted, *see Royal Insurance Co. v. Process Design Associates, Inc.*, 582 N.E.2d 1234, 1242 (Ill. App. Ct. 1991), its existence does not vitiate the conflict between the primary and the insured that arises from the likelihood of an excess judgment. In short, though the conflict in *Wegman* arose later in the underlying litigation than the one at issue here, the basis for the two conflicts is the same. Because the record establishes that there is a conflict between Perma-Pipe and Liberty, Liberty

breached its duty to defend Perma-Pipe by refusing to pay for counsel of Perma-Pipe's choosing.

## Conclusion

For the reasons set forth above, the Court grants Perma-Pipe's motion for summary judgment on Count I of the complaint [30].

**SO ORDERED.**                              **ENTERED: April 21, 2014**

*Ronald A. Guzman*

_____

**HON. RONALD A. GUZMAN**
**United States District Judge**